UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

BREANNA L. SPILLERS,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

Case No. 1:24-CV-376 JD

**OPINION AND ORDER**

Plaintiff Breanna Spillers applied for a period of disability and disability insurance benefits under Title II of the Social Security Act, alleging that she became disabled in May 2018. Her claim was rejected, leading to a review by an Administrative Law Judge ("ALJ"), who concluded that Ms. Spillers was not disabled. The Appeals Council denied the request for review, and Ms. Spillers now seeks judicial review in this Court. For the reasons below, the Court will remand this case to the Agency for additional consideration.

**A. Standard of Review**

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "The threshold for substantial evidence 'is not high.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th

Cir. 2024) (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019)). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Still the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant and the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

B. **Standard for Disability**

Disability benefits are available only to those individuals who can establish disability under the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). The claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42

U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;
2. Whether the claimant has a medically severe impairment;
3. Whether the claimant's impairment meets or equals one listed in the regulations;
4. Whether the claimant can still perform past relevant work; and
5. Whether the claimant can perform other work in the national economy.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. §§404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

**C. The ALJ's Decision**

Ms. Spillers filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning in May 2018. Her claim was denied initially and upon reconsideration, leading to a hearing before an ALJ on January 25, 2024.

On March 6, 2024, the ALJ issued a decision finding that Ms. Spillers was not disabled. (R. at 31.) In doing so, the ALJ employed the customary five-step analysis. At step two, the ALJ determined that Ms. Spillers suffered from the following severe impairments: "major depressive disorder (moderate recurrent episode) with anxious distress and social anxiety disorder." (R. at 20.)

At step three, the ALJ concluded that none of those impairments, alone, or together, equaled a Listing under 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 21.) Next, using the "special technique" provided in 20 C.F.R. § 404.1520a[1] the ALJ evaluated the severity of Ms. Spillers's mental impairments. As relevant to this appeal, relying on Ms. Spillers's hearing testimony, and clinical appointment and treatment notes, the ALJ found that Ms. Spillers suffered moderate limitations in concentrating, persisting, or maintaining pace.[2] (R. at 23.)

---

[1] "The special technique requires the ALJ to first determine whether a claimant has a medically determinable mental impairment(s). § 404.1520a(b)(1). This is done by evaluating the claimant's 'pertinent symptoms, signs, and laboratory findings.' *Id*. If the claimant has a medically determinable mental impairment, the ALJ must document that finding and rate the degree of function limitation in four broad 'functional areas': activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. § 404.1520a(c)(3)" These areas are known as the 'B criteria.'" *Pepper v. Colvin*, 712 F.3d 351, 365 (7th Cir. 2013) (other citations omitted).

[2] The areas of mental functioning are based on a five-point rating scale consisting of none, mild, moderate, marked, and extreme limitation. A person has a moderate limitation if his mental "functioning . . . independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(F)(2)(c). A moderate limitation is greater than a mild limitation, which means that mental function is "slightly" limited, but less than marked limitation, which means that the mental function is "seriously limited." *Id*.

Between steps three and four, the ALJ determined Ms. Spillers's residual functional capacity ("RFC"),[3] finding that through her date last insured (June 30, 2020), she could

> perform a full range of work at all exertional levels but with the following nonexertional limitations: [she] can carry out simple instructions and she can tolerate occasional contact with coworkers, supervisors, and the public.

(R. at 24–25.)

The ALJ posed this RFC to the vocational expert ("VE") as part of a hypothetical question. (R. at 66.) The VE testified that a hypothetical individual with Ms. Spillers's RFC could perform such jobs as hospital cleaner, motor vehicle assembler, and industrial cleaner (*id*.), which the ALJ accepted as part of her decision (R. at 29). Asked about the amount of time an individual can either be absent from work or off task before it becomes work preclusive, the VE stated that a person "could be absent no more than one day per month on average for a total of 12 days per year. And they could be off task no more than 10% of an eight-hour day or a 40-hour workweek." (R. at 68.)

In his decision, the ALJ acknowledged Ms. Spillers's hearing testimony. Ms. Spillers testified that, from May 2018 to June 2020, she could not sustain full-time employment due to social anxiety, depression, and panic attacks. She said that these conditions prevented her from committing to jobs, maintaining relationships, and performing tasks. She also described issues with concentration, personal care, and being easily overstimulated by loud noises, which exacerbated her anxiety. (R. at 25–26.)

---

[3] "The RFC reflects 'the most [a person] can still do despite [the] limitations' caused by medically determinable impairments and is assessed 'based on all the relevant evidence in [the] case record.'" *Cervantes v. Kijakazi*, No. 20-3334, 2021 WL 6101361, at *2 (7th Cir. Dec. 21, 2021) (quoting 20 C.F.R. §§ 404.1545, 416.945(a)).

The ALJ found that, while Ms. Spillers's medically determinable impairments could reasonably be expected to cause the alleged symptoms, her statements about the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical and other evidence in the record. (R. at 28.) According to the ALJ, the record shows only one therapy note during the relevant period, with conservative treatment through therapy and medication management, and no psychiatric hospitalizations. Also, even though Ms. Spillers had some difficulties with anxiety and depression in early 2018, she was generally described as alert, oriented, and cooperative, with unremarkable thought content. In addition, the frequency and severity of panic attacks reported at the hearing are not reflected in the medical records. Finally, by June 2018, she reported significant improvement, better social interactions, and was attending college. (R. at 28–29.)

As part of her decision, the ALJ reviewed prior administrative medical findings, which she found unpersuasive. (R. at 28.) The state agency medical consultant reviewed the evidence and found it insufficient to support the claim by the date last insured. According to the ALJ, these opinions are not fully persuasive because the consultants did not examine Ms. Spillers, only reviewed medical records, and lacked a treatment relationship. They also didn't consider additional evidence presented at the hearing. The ALJ found their opinions to be inconsistent with the medical evidence, which shows Ms. Spillers's severe mental impairments, therapy engagement, medication management, and abnormal mental status findings. (*Id*.)

### D. Discussion

On appeal, Ms. Spillers makes two main arguments. First, she argues that the ALJ failed to rely on substantial evidence when determining her RFC. She notes that the ALJ did not adopt

any medical opinion, creating an evidentiary gap, and then improperly substituted her own opinion for that of a physician while cherry-picking evidence. According to Ms. Spillers, the ALJ should have requested a consultative examination once she recognized the limited medical evidence.

In her second argument, Ms. Spillers contends that the ALJ failed to adequately account for her moderate limitations in concentration, persistence, and pace. She argues that, even though the ALJ's RFC limited her to simple instructions and occasional contact with coworkers, these restrictions do not sufficiently reflect the extent of her mental impairments. Ms. Spillers asserts that the ALJ failed to build a logical bridge between the evidence of her mental limitations and the RFC, and that this omission warrants remand. The Court begins its discussion with this argument.

### (1) *Mental Functioning Limitations*

"The RFC finding is central to the outcome of a Social Security case." *Holiday v. O'Malley*, No. 2:23-CV-302, 2024 WL 2860088, at *3 (N.D. Ind. June 5, 2024), "As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). 20 C.F.R. § 404.1545(a)(2). ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not "severe" . . . when we assess your residual functional capacity.") "This includes any deficiencies the claimant may have in concentration, persistence, or pace." *Id*. Although the ALJ need not use special terminology, the Court cannot "assume that the VE is apprised of such limitations unless she has independently reviewed the medical record." *Id*.

> Before formulating the RFC, at step two, the ALJ utilizes a special technique called the psychiatric review technique ("PRT") to determine the severity of any mental limitations. 20 C.F.R. § 404.1520a. Using the PRT, the ALJ assesses the claimant's function in four categories: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *Id*. Although the ALJ's step two analysis is not an RFC finding, SSR 96-8p, 1996 SSR LEXIS 5, 1996 WL 374184, at *4, if an ALJ finds mental impairments at step two, these should then be "reflected as limitations in the RFC finding." *Alesia v. Astrue*, 789 F. Supp. 2d 921, 933 (N.D. Ill. 2011); *see also Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014) ("As a general rule, . . . the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record."); *Paar v. Astrue*, No. 09 C 5169, 2012 U.S. Dist. LEXIS 4948, 2012 WL 123596, at *13 (N.D. Ill. Jan. 17, 2012) (finding ALJ erred in not including mild mental limitations he found at step two in his RFC analysis).

*Judy M. v. Kijakazi*, 658 F. Supp. 3d 596, 602 (N.D. Ill. 2023). After all, adequate functional mental capacity is required for competitive employment:

> To do a work-related task, you must be able to understand and remember and apply information required by the task. Similarly, you must be able to concentrate and persist and maintain pace in order to complete the task, and adapt and manage yourself in the workplace. Limitation in any one of these parts (understand or remember or apply; concentrate or persist or maintain pace; adapt or manage oneself) may prevent you from completing a work-related task.

*See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(F)(3)(f)(i).

In addition, "an ALJ 'must provide a logical bridge between the evidence and [her] conclusions.'" *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (quoting *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021)). That's a shorthand term for the requirement "that ALJs provide an explanation for how the evidence leads to their conclusions that is 'sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1054 (7th Cir. 2024) (quoting *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014)). "In other words, as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v.*

8

*Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). "That logical bridge can assure a reviewing court that the ALJ considered the important evidence and applied sound reasoning to it." *Moy v. Bisignano*, 142 F.4th 546, 552 (7th Cir. 2025). "We review the ALJ's decision holistically to determine whether the ALJ grappled with evidence favorable to the claimant, but we will not reconsider facts, reweigh evidence, or resolve conflicts." *Chrisman on behalf of N.R.C. v. Bisignano*, 137 F.4th 618, 624 (7th Cir. 2025) (citations omitted).

    As relevant to Ms. Spillers' appeal, at step three of the sequential analysis, the ALJ found that Ms. Spillers suffered moderate limitations in concentration, persistence, and pace.[4] (R. at 22.) The ALJ based her findings on Ms. Spillers's hearing testimony that she was suffering from depression, burnout, anxiety, and panic attacks during the relevant period. The ALJ noted Ms. Spiller's testimony that she experienced panic attacks four times a week, two to three times a day, lasting 15 minutes each. She had difficulty committing to tasks, getting out of bed, leading to job absences or quitting. She also faced concentration issues, needed repeated instructions, and was easily overstimulated, triggering anxiety. The ALJ observed that, in early 2018, shortly before the alleged onset date, Ms. Spillers appeared anxious, depressed, and distressed during therapy sessions and at times endorsed suicidal ideation. Medication side effects included numbness and heart palpitations. (R. at 23.)

    At the same time, the ALJ noted that Ms. Spillers's testimony was tempered by the fact that her depressed and anxious mood was linked to situational stressors like marital and familial

---

[4] Concentration, persistence, and pace refer "to the abilities to focus attention on work activities and stay on task at a sustained rate. Examples include: Initiating and performing a task that [the claimant] understand[s] and know[s] how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(E)(3).

9

issues. Also, during therapy appointments her mood was often normal, with coherent thought processes and no significant cognitive deficits. She reported improvements, was attending college for a while, and noted better sleep and home conditions. (R. at 27.)

Despite these findings, the ALJ's hypothetical question to the VE and the RFC are silent about Ms. Spillers's limitations in concentration, persistence, and pace. Instead, in both the RFC and the hypothetical question, the ALJ stated that Ms. Spillers could perform a full range of work at all exertional capacities with two limitations: "she can carry out simple instructions and she can tolerate occasional contact with coworkers, supervisors, and the public." (R. at 25.) But neither her ability to carry out simple instructions nor her tolerance for contact with others accounts for her moderate limitations in concentration, persistence, or pace. *See Amanda S. v. O'Malley*, No. 423CV35, 2024 WL 163104, at *4 (S.D. Ind. Jan. 16, 2024), report and recommendation adopted, No. 423CV35, 2024 WL 420933 (S.D. Ind. Feb. 2, 2024) (finding that an RFC that only provides that claimant "can understand, remember, and carry out simple instructions" does not contain any restrictions related to concentration, persistence, or pace"). Nor does the record suggest that the VE independently reviewed the medical record so as to be clearly aware of Ms. Spillers's limitations. To the extent that Ms. Spillers has moderate limitations in concentration, persistence, and pace, the VE was not informed of them and based her opinion on an incomplete RFC. *See Lothridge v. Saul*, 984 F.3d 1227, 1234 (7th Cir. 2021) ("The ALJ's findings about the jobs [the plaintiff] could perform needed to account in a meaningful way for the earlier findings that recognized her difficulties with concentration, completing tasks, and managing stress."); *Crump*, 932 F.3d at 570 ("[T]he ALJ must ensure that the VE is 'apprised fully of the claimant's limitations' so that the VE can exclude those jobs that the claimant would be unable to perform." (quoting *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th

10

Cir. 2018)). In other words, the VE's testimony regarding available jobs cannot be relied on as substantial evidence.

The ALJ's failure to include Ms. Spillers's moderate limitation in concentration, persistence, and pace is significant. The VE testified that being off task more than 10% of a workday or missing work more than once a month would be job-prohibitive. (R. at 68.) As a result, it's important to know to what extent, if at all, the ALJ believed Ms. Spillers's limitations in concentration and persistence would interfere with her ability to work gainfully. The VE should have been told about Ms. Spillers's moderate limitations in concentration, persistence, and pace, or the ALJ should have explained why the limitations are inconsequential, so as to be sure that the jobs the VE proposed are ones that Ms. Spillers can actually do. *See Diaz v. Berryhill*, No. 2:17-CV-314, 2018 WL 4627218, at *6 (N.D. Ind. Sept. 27, 2018) ("'If the ALJ believed that the mild limitations in these functional areas did not merit a non-exertional limitation in the RFC, she was obligated to explain that conclusion so that the court can follow the basis of her reasoning.'") (quoting *Muzzarelli v. Astrue*, 2011 WL 5873793, at *23 (N.D. Ill. Nov. 18, 2011)); *see also Colleen G. v. Kijakazi*, No. 23 C 0357, 2024 WL 216666, at *10 (N.D. Ill. Jan. 19, 2024) (remanding because the court could not tell what effect plaintiff's mild limitations would have on her work performance).

Further, to the extent that the ALJ found that "additional restrictions do not appear necessary" (R. at 27), that finding lacks the logical bridge. First, in her decision, the ALJ specifically "acknowledges [Ms. Spillers's] diagnoses, subjective complaints, and objectively abnormal findings made during mental status exams in assessing the residual functional capacity." (*Id. see also* R. at 26 ("The medical evidence of record is very limited in this case with respect to the period at issue from the alleged onset date through the claimant's date last insured

11

of June 2020. In any event, the medical evidence of record does reveal the claimant's history of mental health diagnoses of moderate recurrent episode of major depressive disorder with anxious distress and social anxiety disorder.").) Further, to the extent that the ALJ minimizes the severity of her mental impairments, only concentration is directly implicated. (*Id*. ("[I]t has been consistently noted that the claimant does not experience significant deficits in memory, concentration, orientation, affect, thought processes, and speech.").) Nothing is said to account for persistence and pace, which as noted above are different from concentration.

Moreover, in her decision, the ALJ draws an adverse inference from the fact that Ms. Spillers "did not undergo significant treatment during the period at issue [2018–2020]." The ALJ asked Ms. Spillers at the hearing about the lack of treatment, and Ms. Spillers explained that, during that time, she and her husband moved to Texas, and her husband struggled to find stable employment that offered health insurance, which left her unable to access medical care. (R. at 60.) She also testified that her mental health struggles made it difficult for her to seek treatment:

> A. Originally, it would start out that they would want me to see them on a weekly basis, but as I stated, I have a problem with committing and being able to go and especially going to therapy and talking about my feelings and bringing them to the surface was something very hard for me. Originally, they would want me to go once a week, but I would call and cancel them and push them so that they could be a month in between or a couple of months in between, two to three months in between.
>
> Q. And then did they try to talk you into coming—or going more often or how does that work? Or you just realized that you need to?
>
> A. I had a therapist tell me that, you know, that there's somethings that I need to commit to in order to get better and she had put it in a very pleasant way, but in my mind it felt like I wasn't doing good enough and that led to I probably didn't go back for almost a year.

(R. at 58–59.)

Yet despite Ms. Spillers's explanations for her failure to seek treatment, there's no indication that the ALJ considered them before drawing an adverse inference from the lack of care. This contradicts what the regulations require. *See McHenry v. Berryhill*, 911 F.3d 866, 873 (7th Cir. 2018) ("[A]n ALJ may not draw negative inferences from a claimant's failure to seek treatment without first considering the individual's explanation." (citation omitted)).

What's more, the ALJ noted that Ms. Spillers attended college during part of the relevant period, "and she appeared able to manage her own affairs and medical care." (R. at 27.) Even if that's true, these activities, standing alone, do not indicate the extent to which Ms. Spillers's ability to work is affected by her moderate limitations in concentration, persistence, and pace. "Besides, the Seventh Circuit has cautioned ALJs not to put too much weight on a claimant's activities of daily living because '[t]he critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer.'" *Jessie J. G. v. Comm'r of Soc. Sec.*, No. 17-cv-01324, 2018 U.S. Dist. LEXIS 184832, at *31 (S.D. Ill. Oct. 29, 2018) (quoting *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)).

To be clear, a finding that a claimant suffers moderate limitations in concentration, persistence, and pace does not necessarily mean that she suffers from disabling restrictions. After all, "the spectrum of limitation that may constitute 'moderate' limitation ranges from limitations that may be close to 'marked' in severity to limitations that may be close to the 'mild' level." Revised Medical Criteria for Evaluating Mental Disorders, 81 FR 66138-01. "The regulations also note that people with 'moderate' limitations may or may not qualify as disabled—a question that will be assessed in the residual functional capacity determination." *Moy v. Bisignano*, 142

F.4th 546, 555 (7th Cir. 2025). "The Agency's guidance makes clear that 'moderate' impairments should be considered when an ALJ calculates the claimant's residual ability to work" and "[t]o enable meaningful review, the ALJ must at least describe what the moderate limitations are and how they affect the claimant's ability to work." *Id*. Yet, the RFC is silent as to how Ms. Spillers's moderate limitations in concentration, persistence, and pace affect her ability to work.

In countering Ms. Spillers's arguments, the Commissioner asserts that the cases she, and the Court, relies on are "outdated." According to the Commissioner, those cases applied only "under the agency's prior mental impairment regulations, when the agency did not explicitly define what was meant by a 'moderate' rating." (Def.'s Br., DE 25 at 10.) The Commissioner argues that, under the revised regulations, a "moderate" limitation means "fair" functioning, which is consistent with the RFC limiting Ms. Spillers to "simple instructions with occasional contact with [others]." (*Id*.) The Commissioner points to *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021), for support.

But Pavlicek does not mark a departure from established jurisprudence. Rather, in *Pavlicek*, "an ALJ relied on a doctor's statement that a claimant could work at a 'consistent pace particularly if . . . engaged in a simple, repetitive tasks' despite a checklist item marking the claimant as 'moderately limited' in concentration and pace." *Moy*, 142 F.4th at 555. The Court of Appeals affirmed the ALJ's denial of benefits under those circumstances because the ALJ "justified the conclusion that the claimant could work at a consistent pace by expressly incorporating the doctor's recommendation that the claimant engage in only simple, repetitive tasks (which, according to the doctor, accounted for the claimant's pace-related limitations)." *Id*. But here, no doctor opined that, her limitations in concentration, persistence and pace would be

14

sufficiently accommodated by restricting her to simple instructions and occasional contact with others. So *Pavlicek* is inapplicable.

The Commissioner also argues that "there is no medical professional who found Plaintiff more limited than the ALJ did" and that Ms. Spillers "has not identified any limitations that the ALJ was required to include in the RFC." (Def.'s Br., DE 25 at 11.) But this argument is misplaced because it overlooks the crux of Ms. Spillers's contention: that the ALJ failed to incorporate her own finding of Ms. Spillers's moderate limitations in concentration, persistence, and pace into the RFC. The problem is not that the ALJ failed to find a limitation; it is that the ALJ found one but did not account for it in the RFC.

In summary, the Court finds that the ALJ failed to incorporate moderate limitations in concentration, persistence, and pace into the RFC. As a result, remand is required. And since the case is being remanded, the Court need not address Ms. Spillers's other arguments, although she may raise them before the ALJ.

### E. Conclusion

For these reasons, the Court REVERSES the Agency's decision and REMANDS this matter to the Agency for further proceedings consistent with this opinion. The Clerk is directed to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: September 22, 2025

                                                 /s/ JON E. DEGUILIO
                                                 Judge
                                                 United States District Court